IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

---------------------------------------------------- :
JACK M. DEMPSEY : CASE NO. 1:01 CV 2443
:
Petitioner :
: MEMORANDUM OF OPINION AND
-vs- : ORDER ACCEPTING THE REPORT
: AND RECOMMENDATION OF THE
: MAGISTRATE JUDGE AND
DAVID BOBBY, WARDEN : GRANTING PETITIONER A
: CONDITIONAL WRIT OF HABEAS
Respondent : CORPUS
---------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before this Court is Jack M. Dempsey's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Docket #1). The case was referred to United States Magistrate Judge William H. Baughman, Jr. for a Report and Recommendation ("R&R"). (Docket #4). Magistrate Judge Baughman considered the petition, the amended petition, respondent's return of writ, and petitioner's traverse and position statement. (Docket #1, #9, #12, #18, and #19). On 6 April 2004, Magistrate Judge Baughman filed his R&R, recommending that this Court "issue a writ of habeas corpus unless the state court grants [petitioner] a new trial." (Docket #22). Respondent filed objections to the R&R and petitioner responded to those objections. (Docket #24 and #27).

For the reasons set forth below, this Court accepts the recommendation of the Magistrate Judge and grants Mr. Dempsey a conditional writ of habeas corpus that will

result in the vacation of his conviction and sentence unless the State of Ohio commences a new trial against him within 90 days after this judgment becomes final.

## I. BACKGROUND

**A.    The 11 March 1995 Lorain Fire**[1]

On 11 March 1995, shortly before 11:00 p.m., a fire broke out at 11202 Lorain Avenue in Cleveland, Ohio.  Cleveland firefighters managed to "knock down"[2] the fire within twenty or thirty minutes and to eventually extinguish it completely, but not before it had extensively damaged the building.  Suspecting arson, Chief Paul Marks of the Cleveland Fire Department called two arson investigators, who arrived on the scene at about 11:40 p.m.  The arson investigators noted, among other things, signs of forced entry and two points of origin for the fire on the first floor, ruled out accidental sources of the fire, and concluded that the fire may have been intentionally set.  Subsequently, Chief Marks ordered a firefighter to look for the electrical shut-off in the basement.  Upon reaching the basement, the firefighter entered a room and discovered petitioner Jack Dempsey lying unconscious on his stomach with his shirt pulled up.  Mr. Dempsey was rushed to the hospital and treated for severe smoke inhalation.  Although he was eventually released from the hospital on 21 March 1995, Mr. Dempsey continues to suffer from severe memory loss causing him to forget, among other things, many of the events surrounding the fire.

---

[1] This brief recitation of the events surrounding the 11 March 2005 is taken from <u>State v. Dempsey</u>, 1997 WL 723420, *1 (Ohio Ct. App. Nov. 27, 1997), augmented, as necessary, by the trial transcript which can be found at Docket #13, Ex. F.

[2] Arson investigator Kovacic testified that a fire is "knocked down" when a fire is under control, though not completely out.  (Docket #13, Ex. F at 44).

**B.     The Indictment, Trial, and Verdict**

On 11 December 1997, a Cuyahoga County grand jury indicted Mr. Dempsey on one count of aggravated arson, in violation of Ohio R.C. § 2909.02, and one count of burglary, in violation of Ohio R.C. § 2911.12.  (Docket #13, Ex. A).  After declining a plea to a reduced charge of vandalism (Docket #13, Ex. F at 9-15), Mr. Dempsey proceeded to trial on 12 August 1996.

At trial, the parties presented contending theories to explain Jack Dempsey's undisputed presence at the scene of the crime.  The Assistant County Prosecutor argued that Jack Dempsey broke into the building, set fires in two different places, entered the basement to look for a discrete exit, became trapped in the basement, and then passed out from the smoke.  (Docket #13, Ex. F at 368-69, 373-75, and 403-404).  Mr. Dempsey's counsel, Kathryn Thomas, offered an alternative theory, arguing that someone drugged Jack Dempsey and left him at the scene of the fire.  (Docket #13, Ex. F at 392) ("He was brought there, in an impaired state, and certainly overcome by smoke.")  In support of the defense's theory that Mr. Dempsey was framed, Ms. Thomas called three witnesses.  The first two witnesses were doctors who testified about the presence of morphine in Jack Dempsey's urine in a 12 March 2005 toxicological screening.[3]  The other witness was the defendant himself whose memory of the events was limited.  Mr. Dempsey testified that he went to a bar called the Dollhouse to look for Steven Gallegos, ordered a non-alcoholic

---

[3] Mr. Dempsey received two toxicology screenings, an initial one at Fairview General Hospital and a subsequent one at MetroHealth Hospital.  (Docket #13, Ex. F at 279).  In the second screening at MetroHealth, Mr. Dempsey tested positive for morphine.  (Docket #13, Ex. F at 274 and 278). At trial, the toxicologist testified that she could not definitively say when the morphine was ingested and noted that it could have been ingested as much as three days prior to the 12 March drug screening.  (Docket #13, Ex. F at 299-300).

3

beer from him, and began to feel "very sick" and "spaced out" after drinking the beer. (Docket #13, Ex. F at 314 and 327-28).[4] Although Mr. Dempsey asserted that Mr. Gallegos drugged his beer (Docket #13, at 342-43), defense counsel presented no evidence explaining Steven Gallegos' connection to Jack Dempsey or any possible motive or opportunity for drugging Jack Dempsey, setting the fire at 11202 Lorain, and framing Mr. Dempsey by leaving him at the scene of the crime. When Jack Dempsey attempted to testify about his reasons for looking for Steven Gallegos, he was precluded by the judge from doing so, because Mr. Dempsey's reasons related to Jean Tomusko's beliefs, who was an individual who did not testify at the trial. (Docket #13, Ex. F at 327).

On 16 August 1996, the jury returned its verdict, finding Jack Dempsey guilty of both aggravated arson and burglary. (Docket #13, Ex. F at 435-36). The trial judge imposed concurrent indeterminate sentences of 10-25 years for aggravated arson and 3-15 years for burglary. (Docket #13, Ex. E and F at 451-52). Released from prison on parole on 18 August 2003, Mr. Dempsey's term of parole concluded on 30 August 2004 and he was finally released from supervision by the Ohio Department of Rehabilitation and Correction as of that date.[5]

---

[4] After feeling sick from the drink, Mr. Dempsey stated that he had only vague memories until waking up in the hospital:

> I have memories of smoke, I remember trying to get away from someone or someone was coming after me. I have memories of having a lot of pain in this right temple area, like I was either hit or fell.

(Docket #13, Ex. F at 314-15 and 329-30).

[5] Mr. Dempsey's release from custody and the subsequent conclusion of his parole term, after the filing of his habeas petition, do not render moot his habeas petition. See Abela v. Martin, 380 F.3d 915, 921 (6th Cir. 2004). "He continues to satisfy Article III's 'case or controversy' requirement because of the continuing collateral consequences to a wrongful criminal conviction. Id. (*citing* Spencer v. Kemna, 523 U.S. 1, 8 (1998)).

**C.    Subsequent State Proceedings**

On 25 October 1996, Jack Dempsey, through new counsel, appealed his convictions to the Ohio Court of Appeals for the Eighth Appellate District.  (Docket #13, Ex. H).  In his appeal, Mr. Dempsey raised four assignments of error related to the trial court's failure to grant him a continuance, failure to provide the "mere presence" instruction, failure to exclude improper opinion and hearsay testimony, and failure to sentence Jack Dempsey consistent with Ohio's revised sentencing law.  (Docket #13, Ex. I at vi and Ex. M at iv).  Although the appellate court overruled Mr. Dempsey's first three assignments of error and affirmed the convictions, it found his sentencing assignment of error to be well-taken and remanded him for re-sentencing.  Dempsey, 1997 WL 723420 at *1, *3-7.  The State filed an appeal with the Ohio Supreme Court challenging the court of appeals' sentencing ruling, and Mr. Dempsey filed a cross-appeal contesting the court of appeals' decision to affirm his convictions.  (Docket #13, Ex. T and Ex. V).  Having declined jurisdiction of Jack Dempsey's cross-appeal, the Ohio Supreme Court, on 16 September 1998, reversed the court of appeals' sentencing determination on the authority of State v. Rush, 83 Ohio St. 3d 53 (1998).[6]  (Docket #13, Ex. Y).  Based on the Ohio Supreme Court's decision, the state trial court filed a journal entry on 30 October 1998 providing that "the original sentence is in full force and effect."  (Docket #13, Ex. E1).

While Mr. Dempsey's direct appeal was still pending in the Ohio Court of Appeals, he filed a petition for post-conviction relief in the state trial court arguing that, among other

---

[6]  In Rush, the Ohio Supreme Court held that the amended sentencing provisions only apply to criminal defendants who committed crimes on or after the effective date of the provisions.  83 Ohio St. 3d at syllabus ¶ 2, 55, and 58.  Because Mr. Dempsey's crimes occurred before the new provisions' effective date, they did not apply to him.

5

errors, he was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution and the corresponding provision of the Ohio Constitution. This claim was predicated on the purported failure of defense counsel "to properly investigate, interview, locate, and present the testimony of material witnesses to corroborate the defense's theory." (Docket #13, Ex. A1 and Ex. F1 at 1). In advancing his argument, Mr. Dempsey relied on evidence *de hors* (outside) the trial record, consisting of:

- Affidavits of Kathryn Thomas, Mr. Dempsey's trial counsel; Stephanie Wyant, a Dollhouse employee; Katherine Hill, Mr. Dempsey's roommate at the time; Jose Cruz, Chief Investigator for the Cuyahoga County Public Defender's Office; Jean Tomusko; Lisa Tomusko; and Thomas Tomusko.

- Excerpts from the depositions of Cleveland Fire Department Chief Yatson, Julie Milano, manager of the Dollhouse, and Andrew Segedy, owner of the building at 11202 Lorain Avenue.

(Docket #13, Ex. A1). On 5 May 1999, the trial court issued its decision denying Mr. Dempsey's petition for post-conviction relief. (Docket #13, Ex. F1). With respect to Mr. Dempsey's ineffective assistance of counsel claim, the trial court, "[a]ssuming arguendo that Petitioner's [ineffective assistance of counsel] claim is sufficient to state a claim pursuant to *Strickland* and progeny," held that the claim should be dismissed pursuant to the doctrine of *res judicata*. (Docket #13, Ex. F1). The trial court explained that:

> While the affidavits attached to Petitioner's Petition may arguably lend further support to Petitioner's second claim for relief, Petitioner could have nonetheless availed himself of the opportunity to challenge the effectiveness of his trial counsel on appeal based solely on the trial record and without resort to evidence *dehors* the record had he desired to do so.

6

(Docket #13, Ex. F1 at 9-10).  In affirming the trial court's decision to deny Mr. Dempsey's petition, the court of appeals went a step further and concluded that none of the affidavits or deposition testimony constituted evidence *de hors* the record:

> It is clear from the record before us that Mr. Segedy and Chief Yatson testified at defendant's trial.  Regarding the other witnesses, they were known to defendant but trial counsel chose not to call them to testify. . . .
>
> All of the above witnesses were known to defendant at the time of trial.  Accordingly, we find this evidence was available on direct appeal when defendant was represented by new counsel and was therefore not evidence *de hors* the record as defendant asserts.

(Docket #13, Ex. K1 at 9).  Mr. Dempsey then appealed that ruling to the Supreme Court of Ohio, which declined jurisdiction.  (Docket #13, Ex. P1).

## II.  HABEAS PETITION, MAGISTRATE JUDGE'S R&R, AND OBJECTIONS

On 24 October 2001, Mr. Dempsey filed a petition for a writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, asserting a single ground for relief:

> **Ground:** Trial Counsel [wa]s ineffective under the Sixth and Fourteenth Amendments when counsel fails to properly investigate, interview, locate, and present the testimony of material witnesses who would have corroborated the defense's theory and testimony of the Defendant.

(Docket #1).  After the petition was fully briefed, Magistrate Judge Baughman issued an R&R concluding that Mr. Dempsey did not procedurally default his ineffective assistance of trial counsel claim under Ohio's doctrine of *res judicata*, that the trial court's conclusion that Mr. Dempsey's trial counsel was not ineffective was an unreasonable application of federal law, and that the writ of habeas corpus should be issued unless the state court grants Mr. Dempsey a new trial.  (R&R at 7, 16, and 22-23).  Taking exception to each of the

7

Magistrate Judge's conclusions, Respondent contends that Mr. Dempsey's ineffective assistance of counsel claim was procedurally defaulted and, alternatively, lacks merit. (Docket #24). Moreover, respondent argues that, even assuming that Mr. Dempsey's petition should be conditionally granted as recommended by the Magistrate Judge, it should be conditioned on the state trial court providing an evidentiary hearing on the post-conviction petition rather than on a new trial.

### III. LAW AND ANALYSIS

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(C), this Court reviews *de novo* the portion of the Magistrate Judge's report and recommendation to which specific objection was made. Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). As Respondent objects to the Magistrate Judge's conclusions regarding procedural default, the merits of Mr. Dempsey's ineffective assistance claim, and the appropriate relief, this Court will review each issue *de novo*.

**A.    Procedural Default**

Before examining the merits of Mr. Dempsey's claims, this Court first addresses the Respondent's contention that Mr. Dempsey procedurally defaulted his sole ground for relief and that therefore his petition is barred from federal habeas corpus review.

In general, a federal court may not consider "contentions of general law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." Wainwright v. Sykes, 433 U.S. 72, 87 (1977). If a "state

8

prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined the analysis to be followed when the State argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim.

Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001).  In determining whether the Maupin factors are met, the federal court looks to the last explained state court judgment.  Combs, 205 F.3d at 275; Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991).  If the last reasoned opinion on a claim explicitly imposed a procedural default, there is a presumption, which can be rebutted with strong evidence to the contrary, "that a later decision rejecting the claim did not silently disregard the bar and consider the merits."  Ylst, 501 U.S at 803.  "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review."  Id. at 801.

9

Respondent contends that Mr. Dempsey procedurally defaulted his ineffective assistance of counsel claim by running afoul of Ohio's *res judicata* doctrine.  The *res judicata* doctrine provides that constitutional issues cannot be considered in Ohio post-conviction proceedings where they have already been or could have been fully litigated by a prisoner represented by counsel on direct appeal.  State v. Perry, 10 Ohio St. 2d 175, 176 (1967).  With respect to ineffective assistance of counsel, Ohio courts apply the *res judicata* doctrine in post-conviction proceedings when the defendant is represented by new counsel upon direct review, fails to raise the issue of competent trial counsel, and such issue "could fairly have been determined without resort to evidence dehors the record."  State v. Cole, 2 Ohio St.3d 112, 112 (1982).  As the Sixth Circuit has consistently held that Ohio's *res judicata* doctrine constitutes an "adequate and independent" state ground to foreclose habeas review of federal constitutional claims, see e.g Williams v. Bagley, 380 F.3d 932, 967 (6th Cir. 2004), and Mr. Dempsey concedes that "this rule was actually applied," (Docket #27, at 2), the second and third Maupin procedural default factors are satisfied.  The sole remaining question – one which Magistrate Judge Baughman found to be dispositive – is whether the *res judicata* doctrine was applicable to petitioner's claim; i.e. was the state court correct in applying the *res judicata* doctrine to dismiss petitioner's ineffective assistance of counsel claim.

Before answering this question, the Court must first consider whether such a question is properly within its purview.  Respondent suggests not.  He contends that this Court, on habeas review, is bound to accept, as conclusive, the state court's conclusion that a particular state procedural rule applied.  In essence, respondent argues that if a

10

state court actually applies a state procedural rule, then that definitively satisfies the first Maupin factor as well as the second. Such a position oversimplifies this Court's procedural default inquiry. It is generally true that "a federal habeas court sitting in review of a state-court judgment should not second guess a state court's decision concerning matters of state law." Greer v. Mitchell, 264 F.3d 663, 675 (6th Cir. 2001). However, when the record reveals that the state court's reliance upon its own procedural rule is misplaced, federal courts are "reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded." Id.

After carefully examining Mr. Dempsey's post-conviction petition, this Court concludes that the Ohio Court of Appeals' reliance on the *res judicata* doctrine to bar Jack Dempsey's ineffective assistance of counsel claim was misplaced. Despite recognizing that *res judicata* does not apply to an ineffective assistance claim which could not be fairly ruled on without evidence *de hors* the record, the court of appeals deviated from that rule. After documenting the numerous affidavits and deposition testimony from witnesses who did not appear at the trial which were filed by Mr. Dempsey in support of his ineffective assistance claim, the court of appeals nevertheless concluded, without citing a single case, that this evidence was not outside the record because "[a]ll of the . . . witnesses were known to defendant at the time of trial." (Docket #13, Ex. K1, at 9). Such a conclusion misses the mark because "potential evidence from witnesses who never appeared at trial, as well as testimony of trial counsel respecting trial tactics, is by definition *de hors* the record." Greer, 264 F.3d at 408. Moreover, even affidavits from individuals who testified

11

at trial, such as Chief Yatson and Mr. Segedy, may constitute evidence *de hors* the record. See e.g. Hill v. Mitchell, 400 F.3d 308, 313-314 (6th Cir. 2005).

As the evidence relied on by Mr. Dempsey in his post-conviction petition represents a classic example of evidence *de hors* the record, this Court agrees with the Magistrate Judge that Jack Dempsey did not fail to comply with Ohio's doctrine of *res judicata* by not asserting his ineffective assistance of counsel claim on direct appeal.[7] Accordingly, the first Maupin factor is not satisfied and Mr. Dempsey did not procedurally default his ineffective assistance of counsel claim.

## B. Ineffective Assistance of Counsel Claim

### 1. Standard of Review

When a constitutional claim reaches this Court on a petition for habeas corpus, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") ordinarily limits the review this Court may give to relevant state-court rulings. Hill, 400 F.3d at 313. "[W]ith respect to any claim adjudicated on the merits in State court proceedings," AEDPA permits the granting of habeas relief only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[7] In his objections, respondent argues, in the alternative, that it was appropriate to apply the *res judicata* doctrine as a bar to Mr. Dempsey's ineffective assistance of counsel claim because Mr. Dempsey had indeed raised such a claim on his direct appeal and that claim had been rejected. (Docket #24, at 7-8). Such an argument is based on a strained construction of Mr. Dempsey's first assignment of error on appeal and is lacking in merit. Moreover, although the trial court noted that one could construe petitioner's first assignment of error on direct appeal as encompassing the ineffective assistance of counsel claim before this Court, the Ohio Court of Appeals did not mention, let alone rely, on such reasoning.

28 U.S.C. § 2254(d). By its express terms, however, Section 2254(d)'s constrained standard of review only applies to claims that were adjudicated on the merits in the state court proceeding. Clinkscale v. Carter, 375 F.3d 430, 436 (6th Cir. 2004). When a state court does not assess the merits of a petitioner's habeas claim and the claim has not been procedurally defaulted, this Court "look[s] at the claim *de novo* rather than through the deferential lens of AEDPA." Hill, 400 F.3d at 313; Clinkscale, 375 F.3d at 436; Newton v. Million, 349 F.3d 873, 878 (6th Cir. 2003); Maples v. Stegall, 340 F.3d 433, 436-37 (6th Cir. 2003). Because the Ohio Court of Appeals did not adjudicate the merits of Mr. Dempsey's ineffective assistance of counsel claim and because, as discussed above, the claim was not procedurally defaulted, this Court modifies the Magistrate Judge's R&R, which applied AEDPA's constrained review,[8] and conducts a *de novo* review of Mr. Dempsey's claim.

### 2. Analysis of the Merits

In Strickland v. Washington, the United States Supreme Court explained that the

> [B]enchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

---

[8] The Magistrate Judge reviewed the state trial court's assessment of Mr. Dempsey's ineffective assistance of counsel claim under AEDPA and concluded that the trial court's application of Strickland v. Washington, 466 U.S. 668 (1984) was unreasonable. While the state trial court's decision on Mr. Dempsey's post-conviction petition included some dicta regarding the merits of Mr. Dempsey's ineffective assistance claim, it ultimately held that Mr. Dempsey's claim was "properly dismissed without a hearing pursuant to the doctrine of *res judicata*." (Docket #13, Ex. F1 at 9). In affirming the state trial court, the Ohio Court of Appeals specifically held that "the trial court properly dismissed defendant's claims of ineffective assistance of trial counsel as barred by *res judicata*." (Docket #13, Ex. K1 at 16). Because the applicable state court decision did not adjudicate Mr. Dempsey's claim on the merits, AEDPA's more limited standard of review does not apply.

13

466 U.S. 668, 686-687 (1984). In establishing ineffective assistance of counsel, the defendant must show that his counsel's performance was deficient and prejudicial such that the errors he committed "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. To demonstrate that counsel's performance was deficient, the defendant must show that "counsel's representation fell below an objective standard of reasonableness . . . [under] prevailing professional norms." Id. at 687-688. In assessing the counsel's performance, courts must consider the specific acts or omissions of counsel and determine whether they were "outside the wide range of professionally competent assistance." Id. at 689-90. To establish "prejudice" under Strickland, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Though Mr. Dempsey bears the burden of showing "a probability sufficient to undermine confidence in the outcome," he need not prove that "counsel's unreasonable performance more likely than not altered the outcome of the case." Harries v. Bell, Case Nos. 02-6286/6334 (6th Cir. July 28, 2005) (recommended for full-text publication).

      Mr. Dempsey claims that his trial counsel, Kathryn Thomas, was ineffective for failing to investigate several witnesses that, at trial, would have corroborated his testimony and his theory of the case. It is well-established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Towns v. Smith, 395 F.3d 251, 258 (6th Cir. 2005) (*quoting* Strickland, 466 U.S. at 691). This duty encompasses "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." Id.

14

Although "a particular decision to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," Strickland, 466 U.S. at 691, courts "have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices her client." Towns, 395 F.3d at 258 (collecting cases).

In this case, Ms. Thomas performance was outside the wide range of professional competent assistance when she failed to investigate, interview, and present several witnesses, including Jean Tomusko, Kathryn Hill, Stephanie Wyant, and Julie Milano, who could have provided important information and testimony related to Mr. Dempsey's innocence or guilt on the crimes charged.[9]  Although Mr. Dempsey provided Ms. Thomas with a list of witnesses in late April or early May 1996, including Tomusko, Hill, Wyant, and Milano, who could corroborate parts of his story, none of these witnesses were ever interviewed and none testified at trial.

Prejudice from Ms. Thomas' failure to interview and investigate these witnesses was manifest as they "would have bolstered Mr. Dempsey's defense significantly."  (R&R at 22).  At trial, Ms. Thomas argued that Mr. Dempsey had been drugged and placed at the scene of the crime.  Besides introducing medical evidence that Mr. Dempsey had morphine in his system, she relied solely on Mr. Dempsey's testimony to support the theory

---

[9] The State attempts to excuse Ms. Thomas' performance by blaming the investigators at the Public Defender's Office for failing to complete the investigation and the trial court for making her go forward by denying her motion for a continuance.  (Docket #24, at 17-22).  Such an argument, to borrow a phrase used extensively by the prosecutor in this case, is a red herring.  Ms. Thomas must provide Mr. Dempsey constitutionally effective counsel and that responsibility can not be delegated away.

15

that he was framed. Her complete reliance on defendant's admittedly fragmented and hazy memory left several key gaps that undermined his defense and permitted the State to discount his testimony by arguing in closing:

> Well, who has a bias and interest in this case? Who has the bias and interest to deceive you, to come up with a confabulation explaining his presence at the scene of the fire? It's Jack Dempsey, ladies and gentlemen. He does.

(Docket #13, Ex. F at 372-73). If Ms. Thomas had adequately investigated the witnesses who had been provided to her, defendant's explanation for his presence in the building would have been significantly more credible. Jean Tomusko, Mr. Dempsey's friend, could have explained why Dempsey went to see Steve Gallegos that evening and why Gallegos might have had a motive for framing Mr. Dempsey.[10] Jean Tomusko, her two children, and Julie Milano, the Dollhouse bar manager, could have offered some testimony on Steve Gallegos' temper and penchant for verbal threats and violence.[11] Stephanie Wyant, a dancer at the Dollhouse who had never before met Mr. Dempsey, is a particularly important witness. In her affidavit, she claims Gallegos gave her a non-alcoholic beer to give to Mr. Dempsey, that shortly thereafter Dempsey put his head on the table "as though he were passed out," that Dempsey and Gallegos left the bar at around the same time, that Gallegos left the bar in the middle of his shift, and that Gallegos acted very strange when he left saying "I have to go. It is something real, real important."[12] She also recounted that

---

[10] See Docket #13, Ex. A1 at Ex. F.

[11] See Docket #13, Ex. A1 at Ex. F, G, H, and J.

[12] See Docket #13, Ex. A1 at Ex. B.

16

Gallegos had access to the basement area of the Dollhouse where a set of keys was found that resembled the description of Mr. Dempsey's keys given Ms. Hill.[13] As Mr. Dempsey's keys were never discovered at the scene of the fire, though his car was parked there, this testimony could prove significant to a jury. Finally, Julie Milano could testify that Gallegos stopped working at the bar after the fire and could also have provided information that suggests that Gallegos left the state.[14]

Given the absence of any direct evidence that Mr. Dempsey carried out the crimes and the relatively weak evidence supporting the *mes rea* element of both offenses,[15] Ms. Thomas' failure to investigate, interview, and present testimony from witnesses which would have significantly bolstered defendant's theory of the case undermines confidence in the jury's verdict. Accordingly, this Court concludes that Mr. Dempsey received constitutionally ineffective assistance of counsel in violation of the Sixth Amendment.

**C.     Relief**

Having determined that Jack Dempsey did not procedurally default his ineffective assistance claim and that he received ineffective assistance of counsel in violation of the Sixth Amendment, this Court turns to the Respondent's final objection which relates to the Magistrate Judge's recommendation that a writ of habeas corpus be issued unless Mr. Dempsey is afforded a new trial. The Respondent argues that "the appropriate relief

---

[13] See Docket #13, Ex. A1 at Ex. B and D.

[14] See Docket #13, Ex. A1 at Ex. H.

[15] During a pre-trial hearing where a possible plea agreement was discussed, the state prosecutor acknowledged that "we do not have the strongest case, nor do we have the weakest case, and that's why we would accept a plea to vandalism." (Docket #13, Ex. F).

17

would be for the writ to be conditioned on the trial court conducting an evidentiary hearing on the post-conviction petition." (Docket #24, at 25).

In a habeas proceeding, this Court is vested with the power "to dispose of the matter as law and justice require." Irvin v. Dowd, 366 U.S. 717, 728-29 (1961) (*quoting* 28 U.S.C. § 2243). Because this Court has already concluded that Mr. Dempsey's Sixth Amendment right to effective assistance of counsel has been violated, an evidentiary hearing on that issue in state court is unnecessary. Moreover, as the ineffectiveness of Mr. Dempsey's counsel pervaded and ultimately undermined the reliability of the jury's verdict, a new trial is the only appropriate remedy. See Evitts v. Lucey, 469 U.S. 387, 395 (1985) ("Because the right to counsel is so fundamental to a fair trial, the Constitution cannot tolerate trials in which counsel, though present in name, is unable to assist the defendant to obtain a fair trial on the merits"); see also Martin v. Rose, 744 F.2d 1245, 1252 (6th Cir. 1984) (new trial necessary due to constitutionally ineffective assistance of counsel); Castleberry v. Brigano, 349 F.3d 286, 294 (6th Cir. 2003) (new trial necessary for jury to assess withheld evidence related to a *Brady* violation); Patterson v. Haskins, 316 F.3d 596, 611 (6th Cir. 2003) (new trial necessary due to due process violation arising from faulty jury instruction); Fowler v. Collins, 253 F.3d 244, 249 (6th Cir. 2001) (new trial necessary because the defendant's waiver of counsel was constitutionally infirm).

### IV. **Conclusion**

For the reasons set forth above, this Court grants Jack Dempsey a conditional writ of habeas corpus that will result in the vacation of his conviction and sentence unless the

State of Ohio commences a new trial against him within 120 days after this judgment becomes final.

      IT IS SO ORDERED.

                                                        <u>/s/ Lesley Wells</u>
                                              UNITED STATES DISTRICT JUDGE

Dated: <u>12 August 2005</u>